J-A01005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHAL KENNEDY, SR. | |
| Appellant | No. 1262 EDA 2014 |

Appeal from the Judgment of Sentence December 17, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015289-2009

BEFORE: LAZARUS, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MARCH 22, 2016**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following Appellant's conviction by a jury on five counts of robbery, five counts of unlawful restraint, five counts of false imprisonment, one count of aggravated assault, one count of burglary, one count of criminal conspiracy, one count of possession of an instrument of crime, one count of carrying a firearm without a license, one count of possession of a firearm with manufacturer label altered, and one count of carrying a firearm as a person not to use or possess firearms.[1]  On appeal, Appellant presents seven issues.  After careful review, we affirm.

_____

[1] 18 Pa.C.S.A. §§ 3701, 2902, 2903, 2702, 3502, 903, 907, 6106, 6110.2, and 6105, respectively.

*Former Justice specially assigned to the Superior Court.

The relevant facts and procedural history are as follows: Appellant was arrested in connection with a home invasion robbery, and he proceeded to a jury trial with his co-defendant, Chal Kennedy, Jr., who is his adult son. Appellant chose to represent himself at trial with Robert Dixon, Esquire, serving as his back-up counsel.

At trial, Police Officer Charles Yeager testified that, on August 17, 2009, at approximately 2:20 p.m., he was on patrol with Police Officer Daniel Rippert when a male pedestrian flagged down their police cruiser, pointed to a house, and reported two armed men were holding his friend inside of the house. N.T. Trial, 10/21/13, at 13-15. The officers radioed for back-up, and then approached the house with Officer Rippert covering the back and Officer Yeager covering the front. *Id.* at 16-17. Officer Yeager, who was in full uniform, knocked on the front door, and a man who lived at the house, later identified as Kahim Welton, opened the door, pointed at Appellant, who was then seated on a living room couch, and yelled he has a gun. *Id.* at 18. As Officer Yeager, along with other responding officers, rushed into the house towards Appellant, Mr. Welton screamed that the gun was under a couch cushion. *Id.* at 18-19. As Lieutenant John Ryan handcuffed Appellant, Officer Yeager recovered a fully-loaded gun, as well as a pair of mechanic's gloves, from underneath the couch cushion upon which Appellant was seated. *Id.* at 20.

Meanwhile, Mr. Welton yelled that there was another person upstairs, and accordingly, Officer Yeager proceeded cautiously up the steps. *Id.* at 22. At the top of the steps, he saw Takia Nichols, who lived at the home with Mr. Welton, and three minor children cowering in the corner of a bedroom. *Id.* at 23. Ms. Nichols reported another man was somewhere upstairs. *Id.* Officer Yeager began looking for the other suspect and noticed a bedroom window at the back of the house was open. *Id.* at 24. A short time later, Officer Rippert reported over the police radio that a male suspect, who was later identified as Appellant's son, was taken into custody in the backyard. **Id.**

Officer Yeager testified the police recovered a military-style Kevlar vest from the back bedroom where the window had been opened. *Id.* at 40-41. Also, he noticed Mr. Welton was upset and had markings, which appeared to be from the sticky part of tape, on his arms. *Id.* at 40. Mr. Welton told the officer the men had forced their way into the house at gunpoint, taped him up, and then searched the house. *Id.* at 60. Officer Yeager indicated he later completed a property receipt for the gun, which was seized from the couch, and, at this time, he noticed the gun's serial number had been scratched off. *Id.* at 30-31. On cross-examination, Officer Yeager admitted the gun was never checked for fingerprints or DNA. *Id.* at 57.

Police Officer Rippert confirmed that, as Officer Yeager approached the front of the house, he approached the back. He indicated that, while he was

in the backyard, he observed Appellant's son open and jump out of a second story window onto a small awning which was covering a porch. *Id.* at 71. Once he landed on the ground, Officer Rippert took him into custody. *Id.* at 74. Officer Rippert searched Appellant's son and recovered from his cargo pant's pockets two watches and a bracelet, which belonged to Ms. Nichols, as well as a single .45 caliber bullet, a roll of black duct tape, and a pair of black gloves. *Id.* at 76-79.

Ms. Nichols confirmed she and her three children lived at the subject house with Mr. Welton, who was on house arrest, and, on the day in question, she was shopping with her aunt. *Id.* at 114. When she returned home with her hands full of packages and her purse, she knocked on the front door and Appellant's son, a man she had never seen before, answered it. *Id.* at 115. Appellant's son, who was wearing a bullet proof vest, pushed her inside the house and down to the floor, removing her cell phone from her purse. *Id.* at 116-17. Appellant's son accompanied Ms. Nichols upstairs to check on her children and then led her to the dining room, directing her to sit in one of the chairs. *Id.* at 118. At this time, Ms. Nichols observed Mr. Welton lying on the kitchen floor with his hands taped behind his back and his legs taped together. *Id.* at 119. As Appellant stood over Mr. Welton, Appellant's son, who was holding a handgun, began pacing and asked when is he going to bring it? *Id.* at 119-20. Ms. Nichols assumed he was referring to drugs. *Id.* at 120.

Appellant answered his ringing cell phone a few times, but Ms. Nichols was unable to hear his conversation. *Id.* at 121. At some point, Appellant's son held a pillow over Mr. Welton's face, put the handgun to the pillow, and said he should shoot Mr. Welton. *Id.* When Mr. Welton's cell phone rang, the men directed her to answer it. *Id.* at 122. During the conversation, the person who called asked her if he should call the police, and Ms. Nichols said, "Yeah." *Id.* at 123. Meanwhile, she observed as Appellant's son repeatedly placed a trash bag over Mr. Welton's head making it difficult for him to breathe. *Id.* Ms. Nichols testified that, during the incident, she did not know the condition of her children and she was not permitted to go upstairs to check on them. *Id.* at 125.

Ms. Nichols testified Appellant received another cell phone call and then indicated someone was at the front door. *Id.* at 124. Believing it was his brother, Mr. Welton said not to let his brother in because he did not want him to be a part of the incident. *Id.* The men would not open the door, and Mr. Welton attempted to reassure the men that "they are coming." *Id.* Ms. Nichols did not know to whom Mr. Welton was referring but the men made it clear that they wanted whatever the people were supposed to be bringing. *Id.* at 125.

Ms. Nichols indicated Appellant and his son held the five occupants in the house for a few hours until Mr. Welton's cell phone rang another time. *Id.* at 125-26. Ms. Nichols held the phone to Mr. Welton's ear and the caller

indicated he was on his way. *Id.* at 126. At this point, Appellant's cell phone rang and, after he answered it, he told his son the police were outside of the home. *Id.* Appellant began to panic, and Mr. Welton told them someone most likely set off his house arrest monitor and, if they untied him, he would "get rid of the cops." *Id.* at 127. During this time, Ms. Nichols saw a gun sitting on the kitchen countertop in front of Appellant. *Id.* at 161.

The men untied Mr. Welton and directed Ms. Nichols to sit on the couch. *Id.* at 127. Ms. Nichols testified that, as Mr. Welton went to answer the door, Appellant took off his gloves and put them, as well as the gun that had been sitting on the countertop, underneath the sofa cushion; Appellant then sat down on the sofa. *Id.* at 127, 161, 163-64. Ms. Nichols testified that, when the police ran into the house, Appellant's son ran upstairs, and she did as well to protect her children. *Id.* at 128. She found her three children hiding under a desk in her oldest son's bedroom. *Id.* at 134-35.

Ms. Nichols confirmed the jewelry seized from Appellant's son belonged to her and had been stored in her bedroom dresser. *Id.* at 137-38. Ms. Nichols testified that, prior to the day of the incident, she had never seen a gun in her home. *Id.* at 159. In fact, she testified neither she nor Mr. Welton owned a gun and she did not permit guns in her home because she has children. *Id.* at 139. Ms. Nichols testified that during the incident she felt threatened and the men made it clear she was not free to leave. *Id.* at 162. Moreover, following the incident, she discovered Appellant and his

son gained entry into the house when Ms. Nichols' son opened the door for them. *Id.* at 164.

Lieutenant Ryan testified he responded to Officer Yeager's initial call for back-up, and he followed Officer Yeager to the front door. He confirmed that, when Mr. Welton answered the door, he pointed to the couch and indicated Appellant, who was sitting on the couch, had a gun. *Id.* at 181. Lieutenant Ryan further confirmed that, while he handcuffed Appellant, who was struggling, Officer Yeager recovered a handgun from "underneath the seat cushion on the couch where [Appellant] was seated." *Id.* at 183. Lieutenant Ryan patted down Appellant but found no weapons on his person. *Id.* at 184.

Lieutenant Ryan indicated Mr. Welton and Ms. Nichols told him that the suspects had several firearms in the house, and since only one firearm had been seized by the police at this point, Lieutenant Ryan searched the house. *Id.* at 185-192, 195, 208. In the front, upstairs bedroom, he noticed the drawers were open, and he found two firearms stacked on top of each other on a shelf next to a window. *Id.* at 185-87. Both firearms were loaded, and one of them had a bullet in the chamber ready to be fired. *Id.* at 187-88.

Mr. Welton, who was at the time of trial incarcerated for crimes unrelated to the instant incident, took the stand at trial as a Commonwealth witness. However, he indicated he did not want to testify. N.T. 10/22/13, at 18. Upon questioning by the prosecutor, he denied remembering whether

any men or police arrived at his house on the date in question. *Id.* at 21-22. However, he confirmed that, at the time of the incident, he was under house arrest at the location in question, and he lived there with Ms. Nichols, as well as three minor children, one of whom was his biological son. *Id.* at 19-20.

The prosecutor confronted Mr. Welton with his signed statement, which he had given to the police immediately after the incident. *Id.* at 34-36. In the statement, Mr. Welton indicated Appellant and his son gained entry to the house under the false pretense of being house arrest officers and, once inside, they asked Mr. Welton whether he had any drugs in the house. *Id.* at 35. Also, Mr. Welton noted in the statement that Appellant, who was older, seemed to be the one in control. *Id.* at 50. He further indicated in the statement that the men threatened to kill one of the kids and, in the hopes of "triggering an alarm that something was wrong," Mr. Welton called his brother using a "different name." *Id.* at 35. He explained in the statement that "[a]t one point the offender wearing the blue shirt placed a bag over my head and placed a gun against the side of my head." *Id.* at 42. He indicated one of the offenders had a gun, while the other offender had two guns. *Id.* at 52. Moreover, in the statement, he noted that, after the police arrived and the men agreed to free him so that he could open the door, he directed the police to Appellant and told them the other offender was upstairs. *Id.* at 47-48.

However, at trial, Mr. Welton testified he did not remember giving the statement to the police, although he acknowledged he "must have signed it because that's my signature." *Id.* at 43. The prosecutor also confronted Mr. Welton with his preliminary hearing testimony in which he described the home invasion; however, at trial, Mr. Welton indicated he did not remember testifying at the preliminary hearing. *Id.* at 54-55.

On cross-examination, Mr. Welton denied that the handwriting on the police statement was his writing and he indicated he did not remember reading or signing the statement. *Id.* at 96. Mr. Welton testified he did not remember being at the preliminary hearing. *Id.*

Detective Justin Montgomery testified he was assigned to investigate the home invasion and, accordingly, he responded to the scene. He confirmed he interviewed Mr. Welton at the scene on the day of the incident, and at this time, Mr. Welton had on his right arm duct tape residue. *Id.* at 104. Detective Montgomery confirmed that, as Mr. Welton verbally indicated what occurred, the detective handwrote the statement. *Id.* at 105-07. At the conclusion of the interview, in Detective Montgomery's presence, Mr. Welton reviewed the statement and signed the bottom of each page. *Id.* at 107. Mr. Welton did not ask Detective Montgomery to make any changes to the statement. *Id.*

Cesar Mujica, a crime scene investigator, testified he examined the two handguns, which had been found on the shelf in the house, and they were negative for fingerprints. *Id.* at 171-72.

Police Officer Jesus Cruz, an officer with the firearms identification unit, testified all three handguns seized by the police were operable. *Id.* at 201, 208, 210. He testified the serial number from the gun, which was seized from underneath the couch cushion, was defaced. *Id.* at 202.

Assistant District Attorney ("ADA") Noel Ann DeSantis testified she prosecuted the case against Appellant and his co-defendant/son at the preliminary hearing stage. N.T. Trial, 10/23/13, at 17-18. She confirmed that Mr. Weldon testified at the preliminary hearing, and the notes of testimony from the hearing were a "fair and accurate recording of the testimony." *Id.* at 19-20. She noted Mr. Weldon's preliminary hearing testimony was consistent with the signed statement he gave to Detective Montgomery. *Id.* at 23. She further confirmed that, prior to the preliminary hearing, she met briefly with Mr. Weldon and, at that time, he remembered the details of the home invasion. *Id.* at 21.

After the Commonwealth entered into evidence a certificate of non-licensure for Appellant, the Commonwealth rested and the defense declined to call any witnesses. The jury convicted Appellant on the offenses indicated *supra*, and on December 17, 2013, Appellant proceeded to a sentencing hearing, at the conclusion of which the trial court sentenced Appellant to an

J-A01005-16

aggregate of fifty years to one hundred years in prison.[2]  Appellant filed a timely post-sentence motion, which was denied by operation of law on April 22, 2014, and this timely, counseled appeal followed.  All Pa.R.A.P. 1925 requirements have been met.

In his first issue, Appellant presents sufficiency of the evidence claims.

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.  Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt.  The trier of fact cannot base a conviction on conjecture and

---

[2] We note Appellant's co-defendant/son was also convicted of numerous offenses in connection with the home invasion, and he was sentenced to an aggregate of ten years to twenty years in prison.

- 11 -

speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

*Commonwealth v. Slocum*, 86 A.3d 272, 275-76 (Pa.Super. 2014) (quotation and citation omitted).

Appellant first contends the evidence was insufficient to sustain his conviction for one count of aggravated assault as to Mr. Welton. Specifically, he alleges the evidence does not establish that he caused Mr. Welton serious bodily injury or that he attempted to cause him serious bodily injury. Rather, Appellant argues "the evidence at trial demonstrated the intent to scare the victim[.]" Appellant's Brief at 17.

Appellant was convicted of aggravated assault under 18 Pa.C.S.A § 2702(a)(1), which provides, in relevant part, the following:

> **§ 2702. Aggravated assault**
> **(a) Offense defined.**—A person is guilty of aggravated assault if he:
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1) (bold in original).

"Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious

bodily injury upon another." ***Commonwealth v. Martuscelli***, 54 A.3d 940, 948 (Pa.Super. 2012) (quotation and quotation marks omitted).

> Where the victim does not suffer serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding of an attempt to cause such injury. A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. An attempt under Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. A person acts intentionally with respect to a material element of an offense when. . .it is his conscious object to engage in conduct of that nature or to cause such a result. As intent is a subjective frame of mind, it is of necessity difficult of direct proof. The intent to cause serious bodily injury may be proven by direct or circumstantial evidence.

***Id.*** (citations, quotations, and quotation marks omitted).

In the instant case, it is undisputed that Mr. Welton did not suffer "serious bodily injury" under the statutory definition of this term. Accordingly, the relevant inquiry is whether Appellant attempted to inflict serious bodily injury upon him. ***See id.*** In this regard, the trial court found the following:

> [T]he jury properly found [Appellant] guilty of aggravated assault with respect to [Mr.] Welton. [Appellant] and [his co-defendant] bound [Mr.] Welton's hands and feet with duct tape, placed a plastic bag over his head, and pointed a gun at his temple. At [Appellant's] suggestion, [Appellant's co-defendant] even retrieved a cushion from the couch to put between the gun and [Mr.] Welton's head in order to muffle the sound of gunfire, demonstrating that they were contemplating shooting him. These actions showed circumstances manifesting an extreme indifference to the value of human life and were designed to inflict serious bodily injury, or even death, on [Mr.] Welton.

Trial Court Opinion, filed 11/25/14, at 13.

- 13 -

Viewed in the light most favorable to the Commonwealth, as verdict winner, we agree with the trial court that the evidence sufficiently demonstrated Appellant attempted to cause serious bodily injury to Mr. Welton, and thus, the evidence was sufficient to sustain Appellant's conviction for aggravated assault. *See Commonwealth v. McClendon*, 874 A.2d 1223 (Pa.Super. 2005) (indicating a defendant may be convicted of aggravated assault under an accomplice theory); *Commonwealth v. Russell*, 460 A.2d 316 (Pa.Super. 1983) (indicating choking the victim demonstrated an attempt to inflict serious bodily injury). We specifically reject Appellant's claim that the evidence proved, at most, that he had the intent to scare Mr. Welton.

Appellant next contends the evidence was insufficient to sustain his conviction for robbery as to the three children in the house.

Appellant was convicted of robbery under 18 Pa.C.S.A. § 3701(a)(1)(ii), which provides "[a] person is guilty of robbery if, in the course of committing a theft, he:. . .threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S.A. § 3701(a)(1)(ii). *See Commonwealth v. Robinson*, 936 A.2d 107 (Pa.Super. 2007) (indicating robbery does not require completion of predicate offense of theft); *Commonwealth v. Everett*, 443 A.2d 1142 (Pa.Super. 1982) (indicating the defendant's robbery conviction was supported by sufficient evidence where he aided and abetted cohort in

robbery). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.A. § 3701(a)(2). A person commits the crime of "theft by unlawful taking" if he unlawfully takes the movable property of another with intent to deprive him thereof. 18 Pa.C.S.A. § 3921(a).

Here, Appellant was convicted on five counts of robbery. He concedes the evidence was sufficient to sustain his robbery convictions as to Mr. Welton and Ms. Nichols; however, he argues the evidence is insufficient to sustain his conviction for robbery as to the three minor children. Specifically, he argues the children were removed from the threatening situation by being placed upstairs and were not direct targets of any threats.

In rejecting his claim, the trial court noted Appellant and his son, who was wearing military-style camouflage clothing and a bullet proof vest, forced their way into the victims' home, and ordered the three children upstairs. The record reveals the men were brandishing firearms and, during the several hour incident, repeatedly went upstairs where the children were separated from their adult family members. At one point, the men told Mr. Welton they were going to kill one of the children. Further, the evidence reveals the men searched the upstairs bedrooms and, after the police arrived and Ms. Nichols ran upstairs, she discovered her three children huddled under a desk. Also, when Officer Yeager went upstairs, he found the children scared and huddled around their mother.

- 15 -

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, the trial court properly found the evidence sufficiently established the men threatened the children with or intentionally put them in fear of immediate serious bodily injury. Accordingly, the evidence was sufficient to sustain Appellant's convictions on three counts of robbery as to the children.

Appellant's final sufficiency claim is the evidence was insufficient to sustain his conviction as it relates to his three firearm offenses (one count of carrying a firearm without a license, 18 Pa.C.S.A. § 6106, one count of possession of a firearm with manufacturer label altered, 18 Pa.C.S.A. § 6110.2, and one count of carrying a firearm as a person not to use or possess firearms, 18 Pa.C.S.A. § 6105). Specifically, he alleges there was insufficient evidence establishing that he actually or constructively possessed a firearm.[3]

"To prove possession of a firearm, the Commonwealth must establish that an individual either had actual physical possession of the weapon or had the power of control over the weapon with the intention to exercise that control." *In re R.N.*, 951 A.2d 363, 369-70 (Pa.Super. 2008).

Instantly, Appellant's argument focuses on the fact that, while a gun was recovered by the police from underneath the couch cushion where

---

[3] Appellant does not challenge the sufficiency of the evidence as to the remaining elements of his firearm offenses.

Appellant was seated, the evidence does not sufficiently establish that Appellant, as opposed to someone in the household, placed the gun in this location. We reject Appellant's argument and simply note that Ms. Nichols testified she saw Appellant holding the gun, *i.e.*, he was in actual physical possession of the gun. The jury was free to accept this testimony and, under our standard of review, we find no merit to Appellant's sufficiency of the evidence challenge. **See Slocum**, **supra** (setting forth our standard of review).

In his second issue, Appellant alleges the jury's verdict was against the weight of the evidence.[4]

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.' It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the

---

[4] Appellant preserved his weight of the evidence claim in his post-sentence motion. Pa.R.Crim.P. 607.

> evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Clay**, 619 Pa. 423, 431-32, 64 A.3d 1049, 1054-55 (2013) (citations, quotation marks, and quotations omitted).

Appellant contends the record reflects Mr. Welton's trial testimony was inconsistent with his preliminary hearing testimony, as well as the statement he made to the police. Appellant notes "the evidence demonstrate[s] that the complaining witness [Mr.] Welton refused to cooperate with the Commonwealth[.]" Appellant's Brief at 24. Thus, he contends the jury's verdict was against the weight of the evidence.

In rejecting Appellant's claim, the trial court noted that, although Mr. Welton was not wholly cooperative with the Commonwealth at trial, the jury was presented with his police statement and preliminary hearing testimony, which occurred closer in time to the incident. The jury was free to accept or reject Mr. Welton's testimony, and in particular, the jury was free to weigh the reasons Mr. Welton was uncooperative at trial and determine what impact, if any, his trial testimony should have on the verdict. **See Commonwealth v. Hanible**, 612 Pa. 183, 212 n.11, 30 A.3d 426, 443 n.11

- 18 -

(2011) (stating, "the jury was free to evaluate both [the witness]'s statement to police as well as his testimony at trial recanting that statement, and free to believe all, part, or none of the evidence[ ]") (citation omitted).

Additionally, contrary to Appellant's suggestion, Mr. Welton was not the only complaining witness, and it is noteworthy that the jury heard testimony from Ms. Nichols, who was also present during the home invasion. Accordingly, the jury's verdict was not so contrary to the evidence as to shock one's sense of justice, and the trial court did not abuse its discretion in rejecting Appellant's weight of the evidence claim. **See Clay**, **supra**.

In his third issue, Appellant contends the trial court erred in denying his *pro se* motion to dismiss pursuant to Pa.R.Crim.P. 600. Specifically, he alleges the trial court erred in dismissing his *pro se* motion on the basis it was undeveloped and vague, as well as dismissing it without an evidentiary hearing. He further suggests the trial court improperly shifted the burden to him to demonstrate the Commonwealth was not duly diligent.

Initially, we note our standard of review in this matter is to determine whether the trial court abused its discretion. **Commonwealth v. Hunt**, 858 A.2d 1234, 1238 (Pa.Super. 2004) (*en banc*).

In its Pa.R.A.P. 1925(a) opinion, the trial court stated, in relevant part, the following:

> In the case at bar, there was no Rule 600[] violation. The record shows that on the first day of trial, [Appellant] submitted a motion under Rule 600[]; however, this motion merely added up the days prior to trial and did not subtract excludable time.

- 19 -

Th[e] [trial] [c]ourt informed [Appellant] that this was insufficient and gave him more time to review the docket and compute excludable and non-excludable time. (N.T. 10/21/13, p. 6-8).[5] The next day, [Appellant] submitted an amended motion, listing 12 court continuances, a 91 day delay caused by the prison's failure to bring [Appellant] to court even though a writ was properly completed, and 16 days that were attributable to the Commonwealth. However, he failed to argue how the Commonwealth failed to exercise due diligence.[6] Since

_____

[5] Prior to the presentation of testimony on the first day of trial, the trial court indicated:

I received a one page document from defense for [Appellant] which raises a motion under Rule 660[]. The—this documents does not address the time which was excludable due to defense delays. It doesn't address time that was not excludable due to Commonwealth delays and any of the delays which are attributable to the Court don't count. So they don't count against the Commonwealth.

So what you're going to have to do because I'm not going to do your job. What you have to do is using case law you have to tell me in writing which days are excluded and which days you argue should not be excluded and your defense counsel--you can ask your lawyer to help you with this but I'm not going to do it for you because this would require what I did not want to do before when I told you to write this up.

\*\*\*

As you can see, [Appellant] only talks about--he just adds up the days and you can't just add up the days.

N.T. Trial, 10/21/13, at 6-7.

[6] At the conclusion of testimony on the second day of trial, the trial court indicated:

I received [Appellant's] outline of the dates he has itemized for his [Rule] 660[] motion. It indicates that there were 12 continuances that were court continuances.

\*\*\*

Now, obviously the one that was 91 days that is attributed to the district attorney on 3/11/2013 to 6/3/2013 it says district attorney 91 days but its really the defendant was brought down and a writ was done so you can't show that the Commonwealth was not duly diligent for that.

*(Footnote Continued Next Page)*

[Appellant] was proceeding *pro se*, th[e] [trial] [c]ourt gave him additional time to consult with back-up counsel and develop an argument. (N.T. 10/22/13, p. 218-220). On the following day, [Appellant] stated that he did not have any additional information or arguments to present. Th[e] [trial] [c]ourt denied [Appellant's] motion, stating that "based upon the outline that was submitted to me previously and the other page which says relevant facts and procedural history are as follows, I'm going to deny the defense motion under [Rule] 600[] to dismiss as defense has failed to show the Commonwealth was not duly diligent in bringing this case to trial." (N.T. 10/23/13, p. 16). As [Appellant] failed to demonstrate that any delay in his trial was caused by the Commonwealth's failure to exercise due diligence, th[e] [trial] court properly denied his Rule 600[] motion to dismiss.

Trial Court Opinion, filed 11/25/14, at 22-23 (footnotes added).

We find no abuse of discretion. The essence of Appellant's appellate argument is that the trial court erroneously dismissed his *pro se* Rule 600 motion "out of hand" and without a hearing. However, our review of the record confirms Appellant is mistaken in this regard. Although the trial court did not hold a "separate hearing," the record confirms that, at various points during Appellant's trial, and generally at the conclusion or beginning of the day's testimony out of the presence of the jury, the trial court revisited the

*(Footnote Continued)* ───────────

> So then I'm not sure what the reasons were for these ones that are attributed to the court. So you have to outline that because according to this the Commonwealth is only responsible for 16 days in the last four years which would not show that they're not duly diligent.
>
> ***
>
> You need to consult with you[r] back-up counsel about. . .the standard and case law[.]

N.T. Trial, 10/22/13, at 218-19.

Rule 600 issue on the record, giving Appellant an opportunity to present evidence or argument. N.T. Trial, 10/22/13, at 218-21; N.T. Trial, 10/23/13, at 16.  As the trial court repeatedly noted, it was not the trial court's duty to develop the evidence and argument for Appellant.  N.T. Trial, 10/21/13, at 6; N.T. 10/22/13, at 220.

As to Appellant's claim the trial court improperly shifted the burden to him to demonstrate the Commonwealth was not duly diligent, Appellant did not present this specific challenge in the trial court or in his court-ordered Rule 1925(b) statement.  In any event, we agree with the Commonwealth's responsive argument that the trial court did not reverse the burdens of production and persuasion; but rather, required Appellant to develop his motion and identify periods of time relevant to a Rule 600 analysis.  **See** **Commonwealth v. Ramos**, 936 A.2d 1097 (Pa.Super. 2007) (*en banc*) (discussing in detail the analysis utilized in determining whether there has been a violation of Pa.R.Crim.P. 600).

In his fourth issue, Appellant contends the trial court violated his right of confrontation in improperly limiting defense counsel's cross-examination of Mr. Welton at trial. Specifically, Appellant contends the trial court improperly precluded cross-examination of Mr. Welton regarding the specifics of his prior convictions, as well as the the fact Mr. Welton was on house arrest.  Appellant suggests the ruling was improper because "[Mr.] Welton's supervision on house arrest. . .was a potential bias against

Appellant. . .because it provided a reasonable motive for [Mr.] Weston to lie and to deflect any inquiry that might jeopardize his house arrest." Appellant's Brief at 29-30. He further suggests that, because of the trial court's limitation on cross-examination, "the jury was unable to adequately assess all of the circumstances surrounding [Mr.] Welton's trial testimony and could not properly assess his credibility." *Id.*

Assuming, *arguendo*, the trial court erred in limiting Appellant's cross-examination of Mr. Welton, we conclude any error in this regard was harmless error. While the trial court did not permit cross-examination regarding the specifics of Mr. Welton's prior convictions, the trial court permitted cross-examination as to the fact Mr. Welton was on house arrest at the time of the home invasion. N.T. Trial, 10/22/13, at 97. Moreover, on direct-examination, Mr. Welton admitted that, at the time of the home invasion, he was on house arrest and, at the time of Appellant's trial, he was incarcerated. *Id.* at 15, 19. Thus, although the cross-examination into Mr. Welton's past criminal history may not have been as extensive as Appellant desired, the jury heard evidence regarding Mr. Welton's house arrest and criminal history.

Furthermore, the record reveals that, at Appellant's trial, Mr. Welton recanted and was hostile towards the Commonwealth. He claimed not to remember the home invasion, to recognize either Appellant or Appellant's co-defendant, the police arriving at his house on the subject day, or

speaking to any police officers. Therefore, we conclude Appellant has failed to demonstrate how the alleged limitation placed upon Mr. Welton's cross-examination prejudiced Appellant. Accordingly, we find any error in this regard constituted harmless error. **Commonwealth v. Chmiel**, 585 Pa. 547, 889 A.2d 501 (2005) (indicating harmless error exists where the error did not prejudice the defendant or the prejudice was *de minimis*).

In his fifth issue, Appellant presents a claim of alleged prosecutorial misconduct. Specifically, he contends ADA DeSantis, who prosecuted Appellant's case at the preliminary hearing stage, improperly bolstered and vouched for Mr. Welton's truthfulness and credibility when she testified as a witness during Appellant's trial. **See** Appellant's Brief at 31-32. Appellant indicates that "[w]hile Pennsylvania law does not currently prohibit an assistant district attorney who has handled a prior phase of prosecution from later testifying at the same defendant's trial, the Commonwealth may not use such testimony to improperly bolster a witness' credibility in the eyes of the jury." **Id.** at 32 (citation omitted). In this vein, Appellant suggests ADA DeSantis committed prosecutorial misconduct on direct-examination by repeatedly characterizing Mr. Welton's preliminary hearing testimony as "truthful." **See** N.T. Trial, 10/23/13, at 21-24. Appellant admits that, as to ADA DeSantis' testimony Mr. Welton had testified "truthfully," the trial court

sustained defense counsel's objections;[7] however, he alleges the trial court erred in failing to provide a cautionary instruction to the jury, and therefore, a new trial is warranted. Appellant's Brief at 32, 34.[8]

Appellant has not set forth in his brief that place in the record where he requested a cautionary instruction. In any event, we have reviewed the record and have discovered that Appellant did not request a cautionary instruction. Accordingly, Appellant has waived his claim that the trial court erred in failing to provide a cautionary instruction regarding ADA DeSantis's testimony. **Commonwealth v. Bryant**, 579 Pa. 119, 141, 855 A.2d 726, 739 (2004) ("Failure to request a cautionary instruction upon the introduction of evidence constitutes a waiver of a claim of trial court error in failing to issue a cautionary instruction.") (citations omitted); **Commonwealth v. Sandusky**, 77 A.3d 663, 670 (Pa.Super. 2013) (noting that "[e]ven where a defendant objects to specific conduct, the failure to

_____

[7] Both Appellant and his co-defendant's counsel objected to ADA DeSantis's testimony in this regard. N.T. Trial, 10/23/13, at 21-24.

[8] Appellant also presents a one paragraph argument alleging ADA DeSantis committed misconduct when she testified on cross-examination that "there was nothing that was inconsistent that was in the discovery. I never had to take out that statement to review it with him. He was honest with me." N.T. Trial, 10/23/13, at 25. In a one paragraph argument, Appellant asserts "the reference to other discovery was improper." Appellant's Brief at 33. However, Appellant has not developed this claim, and therefore, we decline to address it further. **Commonwealth v. McMullen**, 745 A.2d 683 (Pa.Super. 2000) (holding blanket assertions of error are insufficient to permit meaningful review).

request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver").

In his sixth issue, Appellant contends he is entitled to a new trial on the basis the prosecutor made remarks during closing argument which constituted prosecutorial misconduct. Specifically, he alleges the prosecutor made inflammatory statements based on facts which were not supported by the evidence. We find Appellant has waived this claim, and consequently, no relief is due.

In analyzing Appellant's claim, we set forth the following relevant portions from the prosecutor's closing argument:

> **[PROSECUTOR]:** Where Kahim Welton lives now has changed. His circumstances have changed a lot. He lives in a place where everything he does is dictated to him. What time he gets up. What time he eats. What time he has to go to bed. Everything is dictated to him. Where he goes. This is his one chance to be in control again. His one chance. You know, but the law says, the law recognizes that. The law knows that things happen from the time a crime was committed until the time someone comes into court and has to face the men that ransacked and terrorized their family. He lives in a culture now where there is no snitching. You don't snitch. And everybody knows when you come down here for a case that's not yours - -
> **[APPELLANT'S CO-DEFENDANT'S COUNSEL]:** Objection, Your Honor. Wasn't in evidence, Your Honor. I think we're testifying at this point.
> **THE COURT:** Overruled.
> **[PROSECUTOR]:** Everybody knows when you come to court for a case that's not yours, why you're coming. He doesn't want to be a snitch. He has to go back in that wall. He has to go back and live with those people.

N.T. Trial, 10/23/13, at 75 (bold in original).

It is well settled that a claim of prosecutorial misconduct is waived on appeal if the defendant did not lodge a contemporaneous objection to the alleged impropriety at trial. **_Commonwealth v. May_**, 584 Pa. 640, 887 A.2d 750 (2005). Here, although Appellant's co-defendant's counsel objected to the prosecutor's remark, Appellant neither lodged his own objection nor joined in his co-defendant's objection. Appellant's co-defendant's objection did not preserve the issue for Appellant for purposes of appeal, and therefore, we find this issue to be waived. **_Commonwealth v. Cannady_**, 590 A.2d 356, 362 (Pa.Super. 1991) (where the defendant did not object, and he did not join in his co-defendant's objection, the issue was waived as to the defendant for purposes of appeal).

In his final issue, Appellant contends the trial court erred in failing to instruct the jury properly that mere presence alone is insufficient to support a conviction.

As the trial court noted in its opinion, the record reveals Appellant did not request a mere presence instruction and he did not object to the trial court's jury instruction as it relates to a mere presence instruction. **See** N.T. Trial, 10/23/13, at 114-17; Trial Court Opinion, filed 11/25/14, at 30. In fact, at the conclusion of the charge to the jury, Appellant indicated he was "okay" with the instruction and had no problem. N.T. Trial, 10/23/13, at 115-16. Accordingly, since Appellant did not object to the jury instruction, we agree with the trial court that he has waived his challenge to the

instruction on appeal. *See Commonwealth v. Forbes*, 867 A.2d 1268, 1274 (Pa.Super. 2005) (finding the appellant waived his challenge to the court's instruction on the elements of burglary where he did not object to that charge); Pa.R.A.P. 302(b).

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/22/2016