590 A.2d 356

**COMMONWEALTH of Pennsylvania**

v.

**Kevin CANNADY, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Anthony DiTULLIO, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 10, 1991.

Filed May 6, 1991.

216

Lee Mandell, Philadelphia, for Cannady, appellant.

Daniel M. Preminger, Philadelphia, for DiTullio, appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before WIEAND, MONTEMURO and HESTER, JJ.

WIEAND, Judge:

Kevin Cannady and Anthony DiTullio were tried together and were found guilty of two counts of murder of the first degree, two counts of robbery, and single counts of criminal conspiracy and possession of an instrument of crime in connection with the robbing and shooting of Ronald Martines and Larry Formosa in Philadelphia on August 9, 1986. The jury was unable to agree upon the penalty; and the trial court, therefore, imposed consecutive sentences of life imprisonment against the defendants in both shootings. The court also imposed concurrent sentences of imprisonment for not less than ten (10) years nor more than twenty (20) years for each count of robbery and not less than five (5) years nor more than ten (10) years for criminal conspiracy. Cannady and DiTullio filed separate appeals, which we have considered together.

Cannady and William Leak were employed at DiTullio's automobile detailing shop at 1430 South Federal Street in Philadelphia. The evidence showed that Formosa and Mar-

tines were in the shop on August 8, 1986, and were looking for methamphetamine. They returned the following day, Saturday, August 9, 1986. According to Leak, who testified as a Commonwealth witness under a grant of immunity, Cannady and DiTullio agreed among themselves to rob Formosa and Martines. Leak was instructed by Cannady to prevent Martines and Formosa from leaving the auto shop. As Martines and Formosa exited the office with DiTullio, they were told that Cannady "had the shit." When they approached Cannady, however, Cannady pulled a gun and shot Formosa in the stomach. At the same time, DiTullio turned on a noisy steam cleaning machine and a vacuum cleaner. As Formosa fell to the ground, Martines ran for an exit, throwing money from his pockets. Leak prevented Martines from escaping by pushing him to the floor, where Cannady shot him in the head. Cannady also shot Formosa in the head. Leak then gathered the money which Martines had strewn on the floor, and Cannady and DiTullio went through the pockets of their fallen visitors, finding the keys to Martines' Cadillac automobile. When one of the victims made a gurgling noise, Cannady fired another shot into the head of each of them.

DiTullio steam cleaned the blood from the floor of the auto shop and helped Cannady and Leak as they placed the bodies of the victims in the trunk of the Cadillac. Cannady then drove the vehicle to the 1500 block of South 19th Street, as Leak and DiTullio followed in DiTullio's car. The Cadillac was there abandoned, after which the three conspirators drove to another location and divided the money. The decomposing bodies of the victims were discovered in the trunk of the Cadillac by police on August 11, 1986. Autopsies were performed, and .22 caliber bullet fragments were removed from the bodies.

■ This evidence was sufficient to prove a killing that was willful, deliberate and premeditated. An intent to kill can be fully formed in a very short time. *Commonwealth v. Graves*, 310 Pa.Super. 184, 199, 456 A.2d 561, 569 (1983). Moreover, an intent to kill can be inferred from the use of a

deadly weapon upon a vital part of another's body, for a person is presumed to intend the natural consequences of his act. See: *Commonwealth v. Rawles*, 501 Pa. 514, 462 A.2d 619 (1983) (stab wound of chest); *Commonwealth v. Gardner*, 490 Pa. 421, 416 A.2d 1007 (1980) (shooting twice at close range, once in neck); *Commonwealth v. Roots*, 452 Pa. 535, 306 A.2d 873 (1973) (stab wound of chest).

Prior to trial, DiTullio filed a request for a bill of particulars and requested the exact time of the shooting. The prosecuting attorney replied by letter and advised that the time of the shootings had been between 5:00 p.m. and 6:00 p.m. on August 9. This was consistent with the testimony which Leak had given at the preliminary hearing. At trial, Leak did not testify to the time of the shootings on direct examination. On cross-examination he was asked about the time and said that the shooting could have occurred between 5:00 p.m. and 6:00 p.m., but that he was not wearing a watch and it might have occurred as early as 3:00 p.m. or 3:30 p.m. Other evidence produced by the Commonwealth was that Formosa had been last seen alive at 2:30 p.m. when he drove away from a steak shop with Martines. The circumstances were such to suggest the possibility of a shooting at an hour earlier than 5:00 p.m. DiTullio's counsel moved for a mistrial. He contended that he had focused on the 5:00 p.m. to 6:00 p.m. time frame in his search for alibi witnesses and had not had a chance to investigate his client's whereabouts earlier in the day. Cannady's counsel, who had not requested a bill of particulars, also moved for a mistrial, contending that he had relied upon the time given to DiTullio's counsel by the prosecuting attorney. The trial court found counsels' averments unworthy of belief and found that counsel, in fact, had anticipated the testimony regarding an earlier time of the shooting. Nevertheless, the court offered to grant a continuance to permit defense lawyers to make a further investigation regarding the existence of alibi witnesses. Cannady produced no alibi witnesses. DiTullio called six alibi witnesses whose testimony covered the entire afternoon of August 9. On appeal, both

defendants contend that the trial court erred when it denied their motions for mistrial.

A bill of particulars is intended to give notice to the accused of the offenses charged in order that he may prepare a defense, avoid surprise, and intelligently raise pleas of double jeopardy and the statute of limitations. *Commonwealth v. Dreibelbis*, 493 Pa. 466, 472, 426 A.2d 1111 (1981); *Commonwealth v. Simione*, 447 Pa. 473, 477, 291 A.2d 764, 766 (1972). When a bill of particulars has been furnished, the prosecution is strictly limited to the particulars which it has supplied. *Id.; Commonwealth v. Bartman*, 240 Pa.Super. 495, 506, 367 A.2d 1121, 1127 (1976). However, a variance between the proof and the bill of particulars does not require a reversal unless the defendant has been prejudiced by the variance. *Commonwealth v. Shirey*, 333 Pa.Super. 85, 149, 481 A.2d 1314, 1348 (1984); *Commonwealth v. Layman*, 290 Pa.Super. 244, 252, 434 A.2d 735, 738 (1981).

■ In the instant case, the variance was not fatal, for the record shows that the defendants were not prejudiced by the variance, if any, in the evidence pertaining to the time of the shootings. DiTullio's alibi testimony was broad enough to cover the entire afternoon on which the shootings occurred. Cannady, on the other hand, was unable to produce alibi witnesses for any time on the afternoon of August 9 despite the court's offer to grant a continuance to allow him to investigate further the existence of such witnesses. Under these circumstances, it cannot be said that appellants are entitled to a new trial because of a minor variance between the time of the shootings recited in the bill of particulars and the time demonstrated by the evidence.

■ William Leak testified as a Commonwealth witness under a grant of immunity. When Cannady became aware of this during Leak's direct examination, he moved for a mistrial, contending that the prosecution had failed to give timely notice thereof. The trial court determined that the

failure to give notice had been unintentional and denied the motion for mistrial. However, the court granted an early recess so that the circumstances surrounding the grant of immunity could be fully investigated by Cannady's counsel and directed the Commonwealth to supply such information. On appeal, Cannady contends that the trial court committed reversible error by denying the motion for mistrial.

The Commonwealth is required to disclose "[a]ny evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth." Pa. R.Crim.P. 305(B)(1)(a). Nevertheless, a trial court has broad discretion in choosing an appropriate remedy for a discovery violation. See: *Commonwealth v. Williams*, 389 Pa.Super. 489, 493–494, 567 A.2d 709, 711 (1989). See also: *Commonwealth v. Gordon*, 364 Pa.Super. 521, 540, 528 A.2d 631, 641 (1987), *allocatur denied*, 517 Pa. 621, 538 A.2d 875 (1987); *Commonwealth v. Palmer*, 319 Pa.Super. 56, 58, 465 A.2d 1050, 1052 (1983). This is granted by Pa.R.Crim.P. 305(E), which provides that:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

In the instant case, the trial court did not abuse its discretion. The court declared a recess immediately upon Cannady's assertion that he had not been given notice of the grant of immunity to the witness and directed the prosecution to provide defense counsel with all information pertinent to such grant of immunity. When trial resumed, Cannady's counsel was able to conduct an extensive cross-examination regarding the grant of immunity. It seems clear, under these circumstances, that Cannady's defense was neither impaired nor impeded by the late notice that

Leak was testifying under a grant of immunity. The trial court did not err when it denied the motion for mistrial.

■ Nicholas Formosa, the brother of one of the deceased victims, testified to an earlier incident in which both victims had gone to DiTullio's shop in connection with a methamphetamine transaction. DiTullio objected to this testimony; Cannady did not. On appeal, DiTullio and Cannady contend that the allowance of this testimony by the trial court was error. The issue has not been preserved for review by Cannady, who failed to object at trial. The evidence, in any event, was relevant and admissible to show the relationship between DiTullio and the victims by showing the nature of their prior dealings. See: *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986) (evidence of defendant's drug dealing with victim's brother, who had motive for murder, relevant to show previous relationship between parties); *Commonwealth v. Russell*, 459 Pa. 1, 326 A.2d 303 (1974) (evidence of prior drug transactions with murder victim admissible to show close relationship between defendant and victim). We conclude, therefore, that the receipt of this evidence does not require the grant of a new trial. Similarly, the trial court's jury instruction with respect to this evidence was appropriate and does not require a new trial.

■ Anthony Lento, an acquaintance of DiTullio and Cannady, testified as a Commonwealth witness to conversations which he had had with DiTullio and Cannady while the three of them were confined to a detention center. During direct examination, the following occurred:

Q. Now, did you ever have any conversations with Mr. Cannady about this incident?

A. Well, in October of '87 Cannady told me that there was no evidence on the trunk murder. He said they got rid of all the evidence which I took it to mean the gun. He said that Billy Leak isn't going to say anything because Billy Leak is in jail and then he said he saved

Ditullio's ass that day. He said—and then he broke it down. He said Ditullio gave him the green light that there was going to be a big score that day.

MR. PREMINGER: Objection and ask that it be stricken and move for a mistrial.

THE COURT: The motion for mistrial is denied. I'll sustain an objection to what Kevin Cannady says Ditullio says.

MR. PREMINGER: I would ask the jury to disregard it, please, Your Honor.

THE COURT: I sustained an objection to what Kevin Cannady says Ditullio says. It is stricken and the jury is instructed to disregard it. I'll see counsel at sidebar.

DiTullio argues on appeal that the trial court erred when, although it sustained an objection and instructed the jury to disregard the testimony, it denied the motion for mistrial.

Whether to grant or deny a motion for mistrial is within the sound discretion of the trial court. A mistrial is necessary only when the incident upon which the motion is based is of such nature as to deny the defendant a fair trial. *Commonwealth v. Crawley,* 514 Pa. 539, 554, 526 A.2d 334, 342 (1987). See also: *Commonwealth v. Chestnut,* 511 Pa. 169, 176, 512 A.2d 603, 606 (1986); *Commonwealth v. Hernandez,* 498 Pa. 405, 415, 446 A.2d 1268, 1273 (1982). "[W]hen prompt curative or cautionary instructions are given by the court, an abuse of discretion will not readily be found." *Commonwealth v. Meadows,* 381 Pa.Super. 354, 360, 553 A.2d 1006, 1009 (1989), *allocatur denied,* 524 Pa. 618, 571 A.2d 381 (1989). See also: *Commonwealth v. Reed,* 400 Pa.Super. 207, 229, 583 A.2d 459, 470 (1990); *Commonwealth v. Thomas,* 361 Pa.Super. 1, 15, 521 A.2d 442, 449 (1987), *allocatur denied,* 516 Pa. 617, 531 A.2d 1119 (1987). A mistrial is not necessary "where cautionary instructions are adequate to overcome prejudice." *Commonwealth v. Lawson,* 519 Pa. 175, 185, 546 A.2d 589, 594 (1988).

In the instant case, the trial court did not abuse its discretion when it denied DiTullio's motion for mistrial.

Lento's testimony regarding Cannady's statement had not served to implicate DiTullio in the robbery or killing; and, therefore, the testimony was not so prejudicial as to require a mistrial. It was sufficient for the court to sustain the objection and instruct the jury to disregard the testimony.

 Finally, Cannady argues that the prosecuting attorney was guilty of misconduct during closing argument to the jury. Our review, however, discloses no basis for relief. This issue has been fully considered by the trial court in its post-trial opinion, and we adopt its reasoning as follows:

"The defendant [Cannady] argues that the first instance of prosecutorial misconduct occurred when the Assistant District Attorney improperly referred to a defense allegation of a conspiracy by the police to 'get' the defendant. The prosecutor made the following argument:

Counsel in his closing, Mr. Preminger [DiTullio's counsel], indicated to you in some sort of fashion that there's some sort of conspiracy going on here, some sort of funny dealings going on here to get Mr. Ditullio and Mr. Cannady and he went on a whole litany of things to try to explain that conspiracy to you to get these individuals. As he indicated, and I wrote down, to get the result they want. Well, I took an oath, too, and the oath is to prosecute a case fairly and accurately as the evidence goes, wherever it goes it goes, and that's my oath, to present a case fairly and on the evidence and I resent the comments of Mr. Preminger that somehow I participated in some sort of conspiracy to get these two individuals. It's just not true. And he says that Detective Koscinski, and he makes a point, that he's not here and then when we [sic] walks in he gives that little smile and says that's part of the conspiracy, too, that he pops up whenever he wants. Well, I'll tell you where Detective Koscinski was. He was working on another homicide for the city of Philadelphia.

MR. MANDELL: Judge, objection.

THE COURT: Overruled.

(N.T. 965–966).

"This argument was not improper; rather, the prosecutor was responding to argument made by defense counsel for co-defendant DiTullio. The thrust of DiTullio's argument was that William Leak implicated DiTullio for a crime which Leak [had] committed.

"During his closing argument, DiTullio's defense counsel also argued that William Leak and Anthony Lento [had] tailored their testimony to the Commonwealth's evidence in order to implicate DiTullio in the killings, and suggested that Leak [had] altered his testimony after the Assistant District Attorney and two homicide detectives investigating the Formosa/Martines murders became aware of inconsistencies in the Commonwealth's case. (N.T. 949–952).

"At the start of his closing argument, DiTullio's defense counsel pointed out to the jury that the two investigating officers were not present in the courtroom. Defense counsel for DiTullio stated:

One of the things you heard a lot about is about statements given to two particular investigators, Alfimow and Koscinski, and they kept coming up. You remember the telephone bills disappeared and telephone bills reappeared and pictures disappeared and reappeared and people talked to them and this and that and the other thing. Coincidence would have it that neither of them are here today and I want you to keep that concept of coincidence in mind because I'm going to take you through the case not by factual recitation from start to finish but I'm going to take you through by coincidence to demonstrate to you that things happened in a certain particular way precisely and only because Anthony Ditullio is not guilty and Billy Leak had a gun in his hand on August 9th, 1986

. . .

(N.T. 942).

"The prosecutor is entitled in his summation to respond to the arguments made by defense counsel. The prosecutor's

comments objected to here were made in fair response to DiTullio's closing argument and the passage cited above. Thus, the defendant's contention that the prosecutor's comments were improper is without merit.

. . . .

"The defendant next alleges that the prosecutor misstated the evidence and made inflammatory and prejudicial remarks during his closing argument.

"Defense counsel for co-defendant DiTullio objected to the following statement by the prosecutor:

If you decide the facts using your common sense and reason and reason through this testimony the way I've evaluated it here for you today and you determine that they did do what the Commonwealth says they did, it will then be your duty to determine what degree of murder and I suggest to you that there's really only one verdict if you're coming back with guilty and that's guilty of murder in the first degree because there can be no other intent when you take a gun and shoot one individual once in the stomach and twice in the head and then you shoot another one twice in the head. In fact, going over to the other one while he's gurgling and shoots him in the head. There can be no other intent for those two individuals than the intent to kill. Now, Anthony Ditullio didn't shoot anybody but nonetheless he planned it, he was involved in it.

MR. PREMINGER: Objection.

THE COURT: Objection overruled.

"(N.T. 997–998). The defendant did not object to this remark by the prosecutor, nor did he join in co-defendant DiTullio's objection. Thus, this issue is waived for purposes of appeal.

"Assuming *arguendo* that this issue was preserved, the defendant's contention is without merit. Again, the Assistant District Attorney is entitled to review the evidence presented at trial and draw reasonable inferences from that evidence. Evidence was presented at trial that one of the

victims made a gurgling or snoring sound after he had been shot, which caused the defendant to shoot both Formosa and Martines in the head for a second time. (N.T. 247). The prosecutor's remarks were a fair summary of the evidence presented at trial.

"Additionally, the prosecutor was entitled to argue to the jury that defendant DiTullio planned the robbery and murders of the decedents. This was a reasonable inference drawn from the facts and evidence as developed during the course of the trial."

The trial was fairly conducted by an able trial judge, and the record discloses no basis for interfering with the jury's verdicts. Therefore, the judgments of sentence must be, as they are,

Affirmed.