J-A28040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NAFIS PENNINGTON, | |
| Appellant | No. 1364 EDA 2015 |

Appeal from the Judgment of Sentence April 16, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos.: CP-51-CR-0013565-2012
CP-51-CR-0013566-2012

BEFORE:  PANELLA, J., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED FEBRUARY 08, 2017**

Appellant, Nafis Pennington, appeals from the judgment of sentence imposed on April 16, 2015, following his jury conviction of aggravated assault,[1] conspiracy,[2] and related weapons offenses.[3]  On appeal, Appellant challenges certain of the trial court's evidentiary rulings and claims that his conviction was against the weight of the evidence.  For the reasons discussed below, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a).

[2] 18 Pa.C.S.A. § 903(c).

[3] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 6108, and 907(a).

We take the underlying facts and procedural history in this matter from the trial court's October 1, 2015 opinion and our independent review of the certified record. The instant matter arose out of two gang-related shootings in the fall of 2011 and the summer of 2012. The Commonwealth charged Appellant in both shootings, but the jury acquitted him of all charges related to the June 11, 2012 shooting.[4] (*See* N.T. Trial, 2/04/15, at 16-17).

In 2011, there was rivalry between two groups in the West Philadelphia neighborhood known as "the Bottom." (*See* N.T. Trial, 1/29/15, at 69-70, 167). Appellant and co-defendant Kiyon Grant associated with a crew that congregated on Mt. Vernon Street between 35th and 38th Streets. (*See id.* at 76, 99, 172). The victims, Randy Brown and Garren Tyler, associated with a faction that gathered around 32nd and Brandywine Streets. (*See id.* at 76, 98-99, 172-73, 177-78).

On November 9, 2011, Brown and Tyler were walking to Brown's house. (*See id.* at 65-67). At the intersection of 32nd and Mt. Vernon Streets, Appellant, co-defendant Grant, and one Jeffrey Johnson walked to

---

[4] Since the jury acquitted Appellant of all charges arising out the June 2012 shooting, we need not discuss it further, except to note that certain of the Commonwealth witnesses testified about both shootings, while others only testified regarding one shooting. One of the witnesses who only testified about the June 2012 shooting was Detective Mary Kuchinsky, who stated that she took a statement from a witness to the incident. (*See* N.T. Trial, 1/29/15, at 155-63).

within three car lengths of Brown and Tyler. (*See id.* at 67-68, 73). The trio pulled out guns and fired on them. (*See id.* at 68-69, 86-87; N.T. Trial, 1/30/15, at 66-67). One bullet hit Brown's left thigh, causing him to fall. (*See* N.T. Trial, 1/29/15, at 69, 168). Tyler attempted to flee but a bullet hit his ankle. (*See id.* at 86, 90, 137).

Detective Craig Fife arrived at the scene and recovered five fired cartridge casings. (*See* N.T. Trial, 1/30/15, at 146). He saw a trail of blood leading to the doorway of Brown's house, one-half block from the scene of the shooting. (*see id.* at 147-48). He saw another blood trail leading to the doorway of Tyler's aunt's house. (*See id.* 146-148).

Brown refused to cooperate with police. (*See* N.T. Trial, 1/29/15, at 168-69; N.T. Trial, 1/30/15, at 154-155). While Tyler initially refused to cooperate with the police, he gave a statement to them in April 2012, after being arrested on an unrelated matter. (*See* N.T. Trial, 1/29/15, at 76-77).

On June 13, 2012, Detective Frank Mullen took a statement from India Tyler (*see* N.T. 1/30/15, at 100); in the statement she said that she saw co-defendant Grant and Jeffrey Johnson shoot her cousin. (*See* N.T. 1/30/15, at 65-66, 105-06). She also stated that Appellant and co-defendant Grant associated with people from 35th Street. (*See id.* at 41). She further discussed a history of disagreements between the 35th Street group and the 32nd Street and Brandywine Avenue group. (*See id.* at 45-46, 50-53, 57-58).

Ms. Tyler testified that Eli Boyd was not associated with either group. (**See** N.T. Trial, 1/30/15, at 41). Mr. Boyd testified that, on June 29, 2012, he gave a statement to the police. (**See** N.T. Trial, 2/02/15, at 62). In his statement, he described animosity between the two neighborhood groups over drugs and territory. (**See** N.T. Trial, 2/02/15, at 83-87). Boyd also told police that Appellant, co-defendant Grant, and Johnson, shot Tyler and Brown in November 2011. (**See id.** at 86-87, 89-91, 94-95).

On July 2, 2012, police officers executed a search warrant at 3421 Wallace Street, the residence of Whitley Kelly, the mother of Appellant's child. (**See** N.T. Trial, 1/30/15, at 116-17; N.T. Trial, 2/02/15, 164-65). They recovered a black Hi-Point semiautomatic handgun, which was loaded, several bills in Appellant's name, and a receipt showing that Appellant had paid rent to Kelly. (**See** N.T. Trial, 2/02/15, at 165-66). Subsequent testing demonstrated that the gun was operable, and that it had fired all five shell casings recovered from the scene of the shooting. (**See id.** at 189-91).

On November 28, 2012, the Commonwealth filed a criminal information. A jury trial began on January 29, 2015.

At trial, Tyler testified in accordance with the statement he gave to police, stating that Appellant and co-defendant Grant shot him and Brown. (**See** N.T. Trial 1/29/15, at 67-69; **see generally**, **id.** at 86-97). However, India Tyler recanted her previous statement with respect to the shooting.

(**See** N.T. Trial, 1/30/15, at 34, 47-48, 50-53, 56, 58).   Boyd also recanted his statement to the police.  (**See** N.T. Trial, 2/02/15, at 63).

Detective Matthew Carey, a detective with significant experience in the neighborhood, testified, without objection, that Appellant and co-defendant Grant were from the area of 35th Street to 38th Street on Mt. Vernon Street. (**See** N.T. Trial, 1/29/15, at 172; N.T. Trial, 1/30/15, at 16).   However, Brown and his friends lived in the area of 32nd Street and Brandywine and Haverford Avenues.  (**See** N.T. Trial, 1/29/15, at 172).  Tyler associated with Brown and his friends.  (**See id.** at 172-73).  Detective Carey stated that Boyd was friends with both groups.  (**See id.** at 173).  He noted that India Tyler was related to Garren Tyler.  (**See id.**).  When the Commonwealth attempted to question Detective Carey about "the relationship between the groups that hang at 32nd and 33rd and the group that hangs at 35th and 36th[,]" Appellant objected, claiming that this called for a "speculative opinion." (**Id.** at 178).[5]  Ultimately, Detective Carey testified that Appellant

_____

[5] At that point, the trial broke for the day.  The next morning, Appellant's counsel admitted that he had no law to support a contention that a police officer possessing sufficient familiarity with an area could not testify about neighborhood rivalries.  (**See** N.T. Trial, 1/30/15, at 5-6).  Appellant did not renew his objection that the testimony was speculative.  Rather, he asked that the trial court conduct an *in camera* hearing to lay a foundation about Detective Carey's familiarity with the neighborhood before allowing the jury to hear the testimony, stating if "he has expertise and then, if Your Honor says I believe he'd be qualified to talk about that, then we'll let the jury hear the testimony[.]"  (**Id.** at 7-8).  The trial court then ruled that Detective Carey could not mention any criminal activities or gangs.  (**See id.** at 9-11). *(Footnote Continued Next Page)*

- 5 -

and co-defendant Grant "associated with 35th Street to 38th Street on Mt. Vernon Street and Melon Street, exclusively." (N.T. Trial, 1/30/15, at 16). He continued that "these guys primarily stay on those blocks, they don't go to 32nd Street and hang out and (sic) 33rd Street[. . . . ]" (*Id.*). He reiterated that the victims were part of the 32nd and 33rd Street group and that the two groups did not co-mingle. (*See id.* at 17-19).

Detective Craig Fife, the assigned detective with respect to the November 2011 shooting testified as to his role in the investigation. (*See* N.T. Trial, 1/30/15, at 142-73). On cross-examination, when asked by co-defendant's Grant's counsel how he ascertained that his client lived at a certain address, Detective Fife stated that he obtained the address through probation or parole. (*See* N.T. Trial, 2/02/15, at 22).

On February 4, 2015, the jury convicted Appellant of the above-cited offenses related to the November 2011 shooting. (*See* N.T. Trial, 2/04/15, at 15-16). On April 16, 2015, the trial court sentenced Appellant to an aggregate term of incarceration of not less than twenty-six nor more than

*(Footnote Continued)* ─────────────

Appellant noted that evidence regarding a relationship between Appellant and co-defendant Grant was already in the record and that they were not disputing that they knew each other. (*See id.* at 11-12). The trial court ruled that Detective Carey could testify that he had seen Appellant and co-defendant Grant together and with others in a group and that, he had seen the victims with a group that congregated in a different area. (*See id.* at 13).

sixty years. (***See*** N.T. Sentencing, 4/16/15, at 41). Appellant did not file any post-sentence motions.

On May 14, 2015, Appellant filed a timely notice of appeal. On June 3, 2015, prior to the trial court issuing an order, Appellant filed an eleven-page Rule 1925(b) statement. (***See*** Concise Statement of Errors, 6/03/15, at unnumbered pages 1-11). On October 1, 2015, the trial court issued an opinion. ***See*** Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

1. Was it improper for the [t]rial [c]ourt to allow Detective Carey to testify about rival gangs and the Appellant's alleged affiliation with one of these criminal organizations?

2. Did the trial court abuse its discretion when it failed to declare a mistrial upon [t]rial [c]ounsel's request when Detective Fife provided evidence for how he identified [co-defendant] Grant, India Tyler and Eli Boyd testified (sic) about a source of information, and the Commonwealth made inflammatory remarks during closing arguments?

3. Did the [t]rial [c]ourt improperly allow the Commonwealth to present testimony from Detective Kuchinsky[,] which unfairly surprised and prejudiced him during his trial?

4. Was the finding by the jury adjudicating Appellant guilty against the weight of the evidence presented at trial?

(Appellant's Brief, at 3).

Prior to analyzing the issues in Appellant's brief, this Court must determine whether any issues have been properly preserved for our review. ***See Commonwealth v. Wholaver***, 903 A.2d 1178, 1184 (Pa. 2006), *cert.*

*denied*, 549 U.S. 1171 (2007) (holding that appellate courts may *sua sponte* determine whether issues have been properly preserved on appeal).

Rule 1925(b)(4) provides, in pertinent part:

(ii) The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge. The judge shall not require the citation to authorities; however, appellant may choose to include pertinent authorities in the Statement.

\* \* \*

(iv) The Statement should not be redundant or provide lengthy explanations as to any error. Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver.

Pa.R.A.P. 1925(b)(4)(ii), (iv).

Here, Appellant filed a Rule 1925(b) statement that was eleven pages in length, and which raised close to sixty issues. (**See** Concise Statement of Errors Complained of on Appeal, 6/03/15, at unnumbered pages 1-11). Given this, this Court would be well within its rights to find Appellant has waived all issues on appeal. **See Jiricko v. Geico Ins. Co.**, 947 A.2d 206, 210 (Pa. Super. 2008), *appeal denied*, 958 A.2d 1048 (Pa. 2008) (finding waiver appropriate remedy where appellant filed five-page incoherent statement of errors); **see also Kanter v. Epstein**, 866 A.2d 394, 401 (Pa. Super. 2004), *appeal denied*, 880 A.2d 1239 (Pa. 2005), *cert. denied*, 546 U.S. 1092 (2006). However, the trial court admirably attempted to address Appellant's claims. (**See** Trial Ct. Op., at pages 8-44). Because of this, and because Appellant included only four issues in his brief, despite our grave

reservations, we decline to find waiver and will address the issues in Appellant's appeal.

In his first and third issues, Appellant challenges certain evidentiary rulings made by the trial court. (*See* Appellant's Brief, at 3). This Court has held that:

> With regard to evidentiary challenges, it is well established that [t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Serrano*, 61 A.3d 279, 290 (Pa. Super. 2013) (citation and quotation marks omitted).

In his first claim, Appellant alleges that the trial court erred in allowing Detective Carey[6] to testify about rival gangs and Appellant's affiliation with a

_____

[6] To the extent that Appellant appears to argue that the trial court also improperly allowed Tyler and Boyd to testify about "a potential organized crime war[,]" (Appellant's Brief, at 15; *see also id.* at 15-18), the claims are waived because they do not appear in Appellant's statement of questions involved. The Rules of Appellate Procedure provide that issues to be resolved must be included in the statement of questions involved or "fairly suggested" by it. Pa.R.A.P. 2116(a). These issues are not included in the statement of questions involved, nor are they "fairly suggested" by it. Thus, we hold that Appellant has waived these claims. *See Commonwealth v. Harris*, 979 A.2d 387, 397 (Pa. Super. 2009) (holding claim waived when
*(Footnote Continued Next Page)*

criminal organization. (**See** Appellant's Brief, at 14). Appellant claims that this was improper evidence of other crimes admitted in violation of Pennsylvania Rule of Evidence 404(b). (**See id.**). However, Appellant waived this claim.

Initially we note that Appellant's contention that Detective Carey "made prejudicial and speculative statements remarks about Appellant's alleged gang affiliation and a suspected turf war[,]" is not supported by the record. (Appellant's Brief, at 16). As described above, Detective Carey never used the word gang, referred to any criminal activities with respect to the two groups, or discussed a turf war. (**See** N.T. Trial, 1/29/15, at 172-73; N.T. Trial 1/30/15, at 16-19). Rather, he testified that people who lived in different parts of the neighborhood associated with others from that area; Appellant and co-defendant Grant associated with one group of people; Brown and Tyler associated with a different group; and the two groups did not mix.[7] (**See id.**). The only testimony regarding a history of animosity

_____

*(Footnote Continued)* —————

not included in statement of questions involved). Moreover, the record reflects that Appellant did not object to either Tyler or Boyd's testimony at trial. (**See** N.T. Trial, 1/29/15, at 70, 76; N.T. Trial 2/02/15, at 83-87). It is settled that failure to raise a contemporaneous objection constitutes a waiver of the claim. **See Commonwealth v. Powell**, 956 A.2d 406, 419 (Pa. 2008), *cert. denied*, 556 U.S. 1131 (2009).

[7] We note that Detective Carey's testimony was cumulative of the more detailed testimony of Garren Tyler, India Tyler, and Eli Boyd with respect to the affiliations and animosities in the neighborhood; Appellant did not object
*(Footnote Continued Next Page)*

between the two groups because of criminal activity came in the unchallenged testimony of Boyd. (*See* N.T. Trial, 2/02/15, at 83-87).

In any event, to the extent that Appellant claims that the trial court improperly admitted Detective Carey's testimony in violation of Pa.R.E. 404(b) or that it was unduly prejudicial, (*see* Appellant's Brief, at 14, 16), he waived the claim. At trial, Appellant initially objected to Detective Carey's testimony as speculative. (*See* N.T. Trial, 1/29/15, at 178). He then tacitly withdrew the objection the next day, subject to the Commonwealth's laying a foundation as to the basis of Detective Carey's knowledge, and never renewed the objection. (*See* N.T. Trial, 1/30/15, at 5-8). It is settled that failure to raise a contemporaneous objection constitutes a waiver of the claim. *See Powell*, *supra* at 419. Moreover, this Court has stated that, "[w]here a specific objection is interposed, other possible grounds for the objection are waived." *Commonwealth v. Shank*, 883 A.2d 658, 672 (Pa. Super. 2005), *appeal denied*, 903 A.2d 538 (Pa. 2006) (citations omitted). Because Appellant withdrew his objection to the allegedly speculative nature of Detective Carey's testimony and did not otherwise object to his testimony on the grounds of unfair prejudice or as a violation of Rule 404(b), he has waived this claim. *See Powell*, *supra* 419; *Shank*, *supra* at 672.

_____

*(Footnote Continued)*

to any of their testimony on this topic. (*See* N.T. Trial, 1/29/15, at 70, 76; N.T. Trial 1/30/16, at 41, 45-46; N.T. Trial 2/02/15, at 83-87).

Furthermore, Appellant's argument is undeveloped. His argument consists of the text of Rule 404(b), and a single generic citation to case law saying that the probative value of evidence must outweigh the potential for prejudice. (*See* Appellant's Brief, at 14). There are no other citations to relevant legal authority and no attempt to apply law to the relevant facts. (*See id.* at 14-19). Moreover, his argument includes a lengthy summary of, and complaint about, the testimony of both Tyler and Boyd, issues that Appellant did not preserve for our review; a factually inaccurate summary of Detective Carey's testimony; and a bald and self-serving claim that the testimony was somehow prejudicial to Appellant. (*See id.*). This Court will not act as counsel and will not develop arguments on behalf of an appellant. *See In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012), *appeal denied*, 56 A.3d 398 (Pa. 2012). When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we can dismiss the appeal entirely or find certain issues to be waived. *See* Pa.R.A.P. 2101; *R.D.*, *supra* at 674. Accordingly, we find Appellant waived his claim for this reason as well.

In his third claim, Appellant alleges that the trial court erred in allowing the Commonwealth to present the testimony of Detective Kuchinsky. (*See* Appellant's Brief, at 24). Specifically, Appellant claims that Detective Kuchinsky's testimony constituted unfair surprise, was prejudicial to him, and violated his rights under the Confrontation Clause of the United

States Constitution. (*See id.* at 24-25). However, Appellant has waived this claim.

Appellant argues that the trial court erred in finding that he waived this claim because he did not object to Detective Kuchinsky's testimony. (*See* Appellant's Brief, at 25; Trial Court Opinion, 10/01/15, at 12). We agree, as the record reflects that Appellant did object to her testimony. (*See* N.T. Trial, 1/29/15, at 154). However, while Appellant did object, he did not raise the Confrontation Clause issue, or claim unfair surprise and prejudice. (*See id.* at 154-55). Rather, the only basis for his objection was that the Commonwealth did not list Detective Kuchinsky on the witness list. (*See id.*). As discussed above, Appellant cannot raise a different basis for his objection to Detective Kuhinsky's testimony than that raised below. *See Shank*, *supra* at 672. Because Appellant did not object on the grounds of a violation of the Confrontation Clause, unfair surprise, or prejudice,[8]

---

[8] In any event, Appellant cannot show that Detective Kuchinsky's testimony prejudiced him. In her brief testimony, Detective Kuchinsky described the circumstances of taking a statement and showing a photo array to witness Shanise Hewitt in June 2012. (*See* N.T. Trial, 1/29/15, at 155-60). Detective Kuchinsky did not testify about the contents of the statement, and the photo array only involved co-defendant Grant, not Appellant. (*See id.* at 159-60). Shanise Hewitt was a witness to the June 2012 shooting, not the November 2011 shooting. (*See id.* at 31-32, 48-51). Appellant was acquitted of all charges in connection to the June 2012 shooting. (*See* N.T. Trial, 2/04/15, at 16-17). Thus, Appellant cannot demonstrate prejudice.

he waived his third claim.[9] *See id.*

In his second claim, Appellant makes three distinct charges of error. He claims that the trial court erred or abused its discretion in failing to declare a mistrial when Detective Fife testified about how he obtained information regarding co-defendant Grant's address. (*See* Appellant's Brief, at 19-21). He next contends that the trial court should have declared a mistrial because "India Tyler and [] Boyd (sic) testimony about a source of information was extremely prejudicial and was impermissible hearsay." (*Id.* at 21) (unnecessary capitalization omitted). He also argues that the trial court improperly allowed the Commonwealth to "reference non-participants in the trial during its closing arguments." (*Id.* at 23).

Appellant claims that the trial court erred in not declaring a mistrial[10] after Detective Fife testified that he had obtained co-defendant Grant's address "through probation or parole, or something to that effect." (N.T. Trial, 2/02/15, at 22). We find that Appellant waived this claim.

In the instant matter, we note that neither party made a contemporaneous objection to Detective Fife's testimony. (*See* N.T. Trial,

---

[9] Appellant has abandoned on appeal his claim that the trial court erred in admitting Detective Kuchinsky's testimony because her name was not on the witness list. (*See* Appellant's Brief, at 24-25).

[10] We briefly note that, "[o]ur standard of review for the denial of a motion for a mistrial is limited to assessing whether the trial court abused its discretion." *Commonwealth v. Scott*, 146 A.3d 775, 778 (Pa. Super. 2016) (citation omitted).

2/02/15, at 22). At the conclusion of Detective Fife's testimony, co-defendant Grant's counsel moved for a mistrial. (*See id.* at 39-41). Appellant's counsel did not join in the motion. (*See id.*). The trial court discussed the correct manner in which to handle Detective Fife's testimony on three occasions. (*See id.* at 39-53, 142-49; N.T. Trial, 2/03/15, at 13-15). Appellant's counsel never attempted to join in the objection or move for a mistrial. (*See id.*).

It is settled that an appellate claim regarding the denial of a motion or objection is waived where a defendant does not join in a co-defendant's objection or motion. *See Commonwealth v. Irvin*, 134 A.3d 67, 75 n.12 (Pa. Super. 2016) (waiving claim where appellant did not join in co-defendant's objection); *see also* Pa.R.A.P. 302(a); *Commonwealth v. Cannady*, 590 A.2d 356, 362 (Pa. Super. 1991), *appeal denied*, 600 A.2d 950 (Pa. 1991) (concluding where defendant did not object or join in co-defendant's objection, issue was waived as to defendant for purposes of appeal); *Commonwealth v. Woods*, 418 A.2d 1346, 1352 (Pa. Super. 1980) (issue waived where appellant failed to join objection of co-defendant). Thus, because Appellant did not join in his co-defendant's request for a mistrial, he has waived this issue. *See Commonwealth v. Crocker*, 389 A.2d 601, 602 n.4 (Pa. Super. 1978) (appellate claim waived where appellant did not join in co-defendant's motion for mistrial).

Moreover, even if Appellant had not waived this issue, his claim is meritless because the testimony in question only concerned his co-defendant. Our Supreme Court has stated, "[a] party generally cannot vicariously litigate the claims of another party." ***Commonwealth v. McCrae***, 832 A.2d 1026, 1034 (Pa. 2003), *cert. denied*, 543 U.S. 822 (2004). Because Detective Fife's testimony only implicated co-defendant Grant, Appellant's allegation fails. ***See id.***

Appellant claims that the trial court erred in not declaring a mistrial or disallowing certain unspecified testimony by witnesses India Tyler and Boyd. (***See*** Appellant's Brief, at 21-22). However, Appellant has waived this claim.

In his brief, Appellant does not identify the location in the record on appeal where he moved for a mistrial, or sought other relief, and does not fully identify the objectionable testimony,[11] or otherwise specify where he preserved this claim for purposes of appeal. (***See id.*** at 21-22). Our review of the record for this purpose likewise did not identify any place where Appellant moved for a mistrial and we are unable to discern which portion of India Tyler and Boyd's testimony was objectionable.[12] This Court will not act

---

[11] Appellant does not cite to the record for any of India Tyler's testimony. (***See*** Appellant's Brief, at 21-22). While Appellant does provide two record citations for Boyd's testimony, his first is to a single sentence and his second citation is inaccurate. (***See id.***).

[12] Further, to the extent that it can be determined, it appears that any alleged hearsay testimony by India Tyler resulted from the June 2012
*(Footnote Continued Next Page)*

as counsel and will not develop arguments on behalf of an appellant. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007), *appeal denied*, 940 A.2d 362 (Pa. 2008); *see also Bombar v. West American Insurance Company*, 932 A.2d 78, 94 (Pa. Super. 2007). When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we can dismiss the appeal entirely or find certain issues to be waived. *See* Pa.R.A.P. 2101; *Hardy*, *supra* at 771.

Moreover, it is not this court's responsibility to comb through the record seeking the factual underpinnings of Appellant's claim. *See Commonwealth v. Mulholland*, 702 A.2d 1027, 1034 n.5 (Pa. Super. 1997) ("In a record containing thousands of pages, this court will not search every page to substantiate a party's incomplete argument") (citation omitted). Further, when an appellant's brief fails to sufficiently specify if an issue is preserved and the certified record does not substantiate the claim, we may find the issues waived. *See Commonwealth v. Rush*, 959 A.2d 945, 949-50 (Pa. Super. 2008), *appeal denied*, 972 A.2d 521 (Pa. 2009). Accordingly, we find Appellant's claim to be waived. *See* Pa.R.A.P. 302(a); Pa.R.A.P. 2117(c); Pa.R.A.P. 2119(e); Pa.R.A.P. 2101; *Hardy*, *supra* at 771.

_____
*(Footnote Continued)*

shooting. (*See* N.T. Trial, 1/30/15, at 38). As noted above, Appellant was acquitted of all charges related to that shooting.

Appellant's claim with respect to the Commonwealth's closing argument is also waived. The certified record does not include the closing arguments. (**See** N.T. Trial, 2/03/15, at 67-68). Appellant's request for transcript only seeks the transcript for sentencing on April 16, 2015. (**See** Request for Transcript, 6/08/15, at unnumbered page 1). We have stated "[w]hen the appellant . . . fails to conform to the requirements of [Pa.R.A.P.] 1911 [relating to transcript requests], any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review." **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006), *appeal denied*, 916 A.2d 632 (Pa. 2007) (citation omitted). Further, it is the appellant's responsibility to make certain that the certified record contains all items necessary to ensure that this Court is able to review his claims. **See Commonwealth v. B.D.G.**, 959 A.2d 362, 372 (Pa. Super. 2008). An appellant's failure to ensure that the original record as certified for appeal contains sufficient documentation to enable the court to conduct a proper review constitutes a waiver of the issue sought to be reviewed on appeal. **See Growell v. Maietta**, 931 A.2d 667, 676 (Pa. Super. 2007), *appeal denied*, 951 A.2d 1164 (Pa. 2008); **see also Smith v. Smith**, 637 A.2d 622, 623-24 (Pa. Super. 1993), *appeal denied*, 652 A.2d 1325 (Pa. 1993). Accordingly, we find Appellant's contention with respect to closing argument waived.

In his final claim, Appellant challenges the weight of the evidence. (**See** Appellant's Brief, at 25-29).[13]  However, Appellant has not preserved this claim for our review.

We have long held that this Court cannot consider, in the first instance, a claim that the verdict is against the weight of the evidence.  **See Commonwealth v. Wilson**, 825 A.2d 710, 714 (Pa. Super. 2003).  Here, Appellant did not file a post-sentence motion.  While he did make certain oral motions at sentencing, those challenged the sufficiency of the evidence and certain evidentiary rulings made by the trial court.  (**See** N.T. Sentencing, 4/16/15, at 5, 8-15).  Thus, Appellant did not preserve the issue for our review.  **See Commonwealth v. Burkett**, 830 A.2d 1034, 1036 (Pa. Super. 2003).

Moreover, even if we were to address the merits of the weight of the evidence claim, it would fail.

Our scope and standard of review of a weight of the evidence claim is as follows:

_____

[13] In his brief, Appellant intertwines arguments about the sufficiency and the weight of the evidence.  (**See** Appellant's Brief, at 25-29).  However, any challenge to the sufficiency of the evidence is waived, because it was not included in Appellant's statement of questions involved (**see id.** at 3).  **See Commonwealth v. Williams**, 959 A.2d 1252, 1257 (Pa. Super. 2008) (holding sufficiency of evidence claim waived when not included in statement of questions involved).

The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).

In its Rule 1925(a) opinion, the trial court found Appellant's weight of the evidence claims waived. (*See* Trial Ct. Op., at 42). However, it then explained in detail why it rejected Appellant's weight of the evidence claims. (*See id.* at 42-44). We have thoroughly reviewed both the trial court's opinion and the record in this matter and find that the trial court did not

- 20 -

commit a palpable abuse of discretion in rejecting Appellant's weight of the evidence claims. Therefore, Appellant's final issue fails.

For the reasons discussed above, we find that Appellant's claims are either waived or meritless. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Shogan joins the Memorandum.

Judge Panella concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2017