J-S07040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER WILLIAM POWELL | : | |
| | : | |
| Appellant | : | No. 427 WDA 2021 |

Appeal from the Judgment of Sentence Entered April 29, 2020
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s):  CP-03-CR-0000588-2019

BEFORE:  OLSON, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:           **FILED: MARCH 30, 2022**

Christopher William Powell (Powell) appeals *nunc pro tunc* from the judgment of sentence imposed in the Court of Common Pleas of Armstrong County (trial court) following his jury conviction of one count of person not to possess a firearm.[1]  Powell challenges the trial court's denial of his motion for a mistrial and the sufficiency of the evidence supporting his conviction.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1).

## I.

## A.

This case arises from a May 15, 2019 drug transaction gone awry during which Powell, who has a prior drug conviction prohibiting him from possessing a firearm, was involved in an altercation involving his use of a rifle belonging to his father. The altercation involved Powell and his then-girlfriend, Aaron Neal (Neal), and their friends/acquaintances Jamey Morgan (Morgan), Crystal Kacprowski (Kacprowski) and Eric Dougherty (Dougherty). Because at the time of Powell's trial most of these individuals were facing criminal charges involving the incident, the Commonwealth had prepared immunity orders for the trial court's review so that their testimony in this case could not be used against them in their respective proceedings and presented them to the trial court before trial.

After the Commonwealth's opening statement in the jury trial, defense counsel moved for a mistrial, arguing that the Commonwealth had failed to provide notice before trial that it was seeking immunity for witnesses Neal, Morgan and Kacprowski. The trial court denied the motion for a mistrial and granted the Commonwealth's request for entry of immunity orders.

## B.

Morgan recounted that on the night of May 15, 2019, she was with Kacprowski and Dougherty when Powell contacted her over Facebook Messenger to purchase two grams of crack cocaine for $200. At about 11:00

p.m., Morgan and her friends drove to the home of Powell's parents, with whom he was then residing, and they picked up Neal on the way. When the group arrived at the Powell residence, Neal and Morgan initially went into the house while Kacprowski and Dougherty waited in the vehicle. Powell was the only person in his home when they arrived. According to Morgan, she handed Powell the crack cocaine, but Powell wanted to try it before he paid for it. When Morgan refused, Powell pulled out a rifle and pointed it at her. Powell told Morgan that the police were on their way and that she needed to leave. Morgan yelled for help to her friends in the car and they "all kind of tussled around with the gun." (*Id.* at 40). Dougherty and Powell began fist fighting in the melee until Powell ran off into the woods and Morgan, Kacprowski and Dougherty drove away from the scene with the rifle in the backseat.

During her direct examination, Morgan indicated that she had pled guilty to an unsworn verification charge brought arising out of this incident. Morgan testified to her awareness that the trial court in Powell's case had signed an order granting her immunity for her testimony, that she first learned of this at Powell's trial, and that she was not given any special deals in her own case in exchange for her testimony in this case.

Kacprowski testified that on the night of the incident, she had been using drugs before arriving at Powell's home and that she initially stayed in the car while Neal and Morgan went into the residence. When Morgan screamed for help, Kacprowski went inside the house and observed "Jamey [Morgan] and

- 3 -

Chris [Powell] wrestling over the gun and Aaron Neal was standing there arguing saying she didn't know what was going on and she was trying to push Jamey [Morgan] out the door while she is wrestling with the gun with Chris [Powell]." (*Id.* at 55). The rifle was "in Jamey [Morgan] and Chris [Powell's] hands [and] they were wrestling over it." (*Id.* at 55-56). Kacprowski described the scene as chaotic and stated that Powell and Dougherty began throwing punches at one other. Powell fled into the woods and Morgan, Kacprowski and Dougherty drove away with the gun in the backseat. Dougherty took the rifle "because he didn't want Chris [Powell] to come back and get the gun again." (*Id.* at 58).

On cross-examination, Kacprowski admitted that she had a knife on her person during the incident and that she pulled it out during the altercation. (*Id.* at 64). She also acknowledged that Powell repeatedly directed the group to leave the property. She also testified that she had been granted immunity in connection with her testimony in this case.

Neal stated that she was unaware of how the argument began on the night of the incident but that "they were trying to take the gun out of Chris [Powell's] hand" and that he was just trying to get them out of the house. (*Id.* at 78). Powell and Dougherty then began physically fighting and Kacprowski "pulled a box cutter knife out on" Neal. (*Id.* at 80). Neal testified that the first time she learned of the immunity order was on the day of Powell's

trial, and that she had not been offered any deal with the Commonwealth concerning any charges against her.

Pennsylvania State Police Trooper Nicholas Elliott testified that he was on routine patrol at the time of the incident and he initiated a traffic stop at about 1:00 a.m. of Dougherty's vehicle because a license plate check showed he was driving with a suspended license. Trooper Elliott recovered the firearm from the vehicle and arrested Powell after taking statements from all involved in the altercation at the Powell residence. Trooper Elliott read the statement Powell gave that night into the record, which stated in part: "An altercation over money occurred and Jamey [Morgan] motioned for other people in the car to come in. A male and female came running into my house. A physical altercation started between the male and myself. During the altercation I picked up an old rifle that my dad had by the couch and screamed for them all to leave. The male and myself wrestled further and we ended up on the porch. Eventually I got up and walked away and he took the rifle." (*Id.* at 100-01). Trooper Elliott indicated that although Powell himself did not own the gun, it belonged to Powell's father.

Powell testified in his defense at trial and admitted that he "handled the gun on the night in question" and that he has never denied doing so. (*Id.* at 118). Powell explained that he had no criminal intent in grabbing the gun and that he was protecting himself from the "people come running in my house acting like crazy people over a disagreement over money." (*Id.* at 118-19).

Powell stated that he refused to pay for Morgan's drugs when he felt shortchanged by the amount and they began screaming at one another. When Powell observed two people exit the car and walk towards his home, he "grabbed [the rifle] to protect myself from the people running in my house . . . It was dark . . . it was late . . . I refused to pay for these drugs and there was people rushing in my house." (*Id.* 121-22). Powell recounted that Kacprowski tried to stab Neal as he repeatedly demanded that everyone leave the house. The fight ended on the front porch and he walked away. Powell testified that he never loaded the gun and that he picked it up because he was afraid and used it as "a scare tactic." (*Id.* at 124). He called 911 because he feared that the group would return.

On cross-examination, Powell acknowledged that at the time of the incident, he had not been allowed to possess a firearm legally for ten years. Powell explained that the gun was out in the open at his parents' house and not in a safe because they were in the process of moving. Powell also admitted that the gun was the first weapon involved in the altercation that day.

At the conclusion of testimony, the trial court issued a jury instruction regarding the defense of necessity at Powell's request over objection by the Commonwealth. (*See id.* at 170). The jury found Powell guilty of the firearms offense. On April 29, 2020, the trial court sentenced Powell to a term of 36 to 72 months' incarceration. Counsel for Powell did not file a direct appeal. However, Powell's direct appeal rights were reinstated in March 2021 following

a successful Post-Conviction Relief Act[2] petition.  Powell timely appealed the judgment of sentence and he and the trial court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)-(b).

In its opinion, the trial court explained that it denied Powell's motion for a mistrial because, "defense counsel was shown the immunity orders before they were signed by the court, and each witness testifying under immunity made this clear on the record.  There was no surprise, let alone a surprise that would have served to impair or impede the defense's ability to cross-examine these witnesses." (Trial Court Opinion, 5/18/21, at 5).  The court also rejected Powell's sufficiency of the evidence issue where multiple eyewitnesses provided accounts of the altercation placing the rifle in his hands, including by his own admission, and the jury did not find his claim of justification for his handling of the weapon credible.

## II.

Powell first contends the trial court erred in denying his motion for a mistrial[3] where the Commonwealth failed to provide him with notice before

_____

[2] 42 Pa.C.S. §§ 9541-9546.

[3] "It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion." **Commonwealth v. Dula**, 262 A.3d 609, 633 (Pa. Super. 2021) (citation omitted).  "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." **Id.** (citation omitted).

trial of its intent to request immunity for Morgan, Kacprowski and Neal. Relying primarily on Pennsylvania Rule of Criminal Rule 573,[4] Powell argues that advance disclosure of the immunity request was necessary to his preparation of an adequate defense. He maintains that the Commonwealth's failure in this regard "constitutes unfair surprise" that deprived him of the opportunity to thoroughly cross-examine these witnesses and his ability to have a fair trial. (Powell's Brief, at 16, 23).

Rule 573 governs pre-trial discovery and provides in relevant part:

**(B) Disclosure by the Commonwealth**.

**(1) Mandatory**. In all court cases, on request by the defendant, . . . the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth.

Pa.R.Crim.P. 573 (B)(1)(a) (formerly Rule 305(B)(1)(a)). Evidence favorable to the accused is not limited to evidence that reflects upon his culpability and encompasses any "understanding that the government would extend leniency in exchange for a witness' testimony," which is relevant to the witness' credibility. ***Commonwealth. v. Strong***, 761 A.2d 1167, 1171 (Pa. 2000).

---

[4] Although Powell cites to Rule 305, that Rule was renumbered and amended as Rule 573, effective in April 2001.

If the Commonwealth breaches its discovery obligation, the trial court may grant a continuance or prohibit the introduction of evidence or it may enter any order it deems just under the circumstances. **See** Pa.R.Crim.P. 573(E) (formerly Rule 305(E)). The trial court has broad discretion in choosing the appropriate remedy for a discovery violation. **See Commonwealth v. Causey**, 833 A.2d 165, 171 (Pa. Super. 2003), *appeal denied*, 848 A.2d 927 (Pa. 2004). Additionally, the establishment of a discovery violation does not automatically entitle the appellant to a new trial. Rather, an appellant seeking relief must demonstrate prejudice by showing how a more-timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure. **See id.**

In **Commonwealth v. Cannady**, 590 A.2d 356 (Pa. Super. 1991), *appeal denied*, 600 A.2d 950 (Pa. 1991), a Commonwealth witness testified under a grant of immunity which the defense first became aware of during the witness' direct examination. Cannady moved for a mistrial, contending that the Commonwealth had failed to give timely notice thereof, which the trial court denied. On appeal, we found that the trial court did not abuse its discretion in denying the motion because the defense was able to conduct an extensive cross-examination regarding the grant of immunity, and a review of the record showed Cannady was not negatively impacted by the late notice of the immunity arrangement. **See id.** at 359.

Similarly, in this case, Powell has made no legitimate showing of prejudice resulting from the timing of the Commonwealth's disclosure of its request for immunity for certain witnesses. The record instead reflects that the defense was fully able to thoroughly cross-examine the immunized witnesses. While it was possible that the immunity orders could have impacted the credibility of the witness' testimony, the jury was made aware of the orders and it was within its purview to weigh the truthfulness of each witness' account of the incident. Furthermore, as the trial court points out, the circumstances of this case are even more supportive of the decision to deny a mistrial than those present in **Cannady** where defense counsel was shown the immunity orders **before** they were signed by the court and there was no surprise at all during the witness' testimony. (**See** Trial Ct. Op., at 5).

In sum, Powell had failed to demonstrate a reasonable probability that, had the evidence been disclosed to the defense earlier, the impact on his trial would have been different or any other form of prejudice. We discern no abuse of discretion regarding the trial court's denial of Powell's motion for a mistrial.

**III.**

Powell next challenges the sufficiency of the evidence[5] supporting his person not to possess conviction, arguing that his conduct in handling the rifle was justified pursuant to the defense of necessity. According to Powell, the evidence demonstrates that he reached for his father's gun in an effort "to scare off intruders in his home and no legal alternative existed." (Powell's Brief, at 29). Powell concedes that he handled the rifle and that his prior record bars his possession of firearms, but maintains that no reasonable jury could have convicted him of the offense because he established the defense of necessity. (*Id.* at 26-27, 30).

To establish the offense of person not to possess a firearm, the Commonwealth must establish that the defendant (1) has been convicted of a certain enumerated offense, or otherwise satisfies certain conditions, and

---

[5]

> We review a sufficiency challenge *de novo*, but our scope of review is limited to the evidence of record. The Commonwealth must establish each element of the crimes charged beyond a reasonable doubt, but in so doing, it may rely on wholly circumstantial evidence. The fact-finder, while passing on the credibility of the witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence. A reviewing court views all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth.

*Commonwealth v. Gomez*, 224 A.3d 1095, 1099 (Pa. Super. 2019) (citations omitted).

- 11 -

(2) possesses, uses, controls, sells, transfers, or manufactures a firearm. **See** 18 Pa.C.S. § 6105(a)(1).

We have held that the defense of justification can apply to a Section 6105 charge where the defendant's possession of a firearm occurred during a struggle with the victim. **See Commonwealth v. Miklos**, 159 A.3d 962, 968-69 (Pa. Super. 2017). In order to be entitled to an instruction on justification by necessity, the defendant must offer evidence to show (1) that he was faced with a clear and imminent harm, not one which is debatable or speculative; (2) that he could reasonably expect that his actions would be effective in avoiding this greater harm; (3) that there is no legal alternative which will be effective in abating the harm; and (4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue. **See Commonwealth v. Billings**, 793 A.2d 914, 916 (Pa. Super. 2002); **see also** 18 Pa.C.S. § 503 (regarding justification as a defense).

Here, as noted above, the trial court rejected Powell's sufficiency claim where "multiple witnesses, including Powell testified that he grabbed a working firearm that was leaning against the wall close to where he was sitting. Despite having the witnesses' motives and recollections put at issue by the defense, the jury chose to believe their testimony, and did not find that Powell's actions were justified by necessity. In short, the jury found that Powell possessed and controlled a firearm, without justification, in violation of

the law prohibiting him from doing so based on his prior felony conviction for possession with intent to deliver." (Trial Ct. Op., at 7).

Our review of the record fully supports the trial court's analysis. Additionally, given Powell's admission that the rifle was the first weapon involved in the altercation, it is far from clear how Powell could reasonably expect that his action in introducing a deadly weapon into the argument would be effective in preventing a greater harm or that he lacked any legal pathway forward during the argument. *See Billings*, *supra* at 916. Viewing the evidence in the light most favorable to the Commonwealth with the understanding that the jury, as fact finder, was free "to believe all, part or none of the evidence," *see Gomez*, *supra* at 1099, we find that Powell's sufficiency claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2022

- 13 -